UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROSITTA SMALLWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-770-CG |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Rositta Smallwood brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record[1] and the arguments and authorities submitted by the parties, the Commissioner's decision is affirmed.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her SSI application on April 20, 2011, alleging disability because of depression, anxiety, high blood pressure, sinus problems, chronic pain, neck and back pain, and leg and knee problems beginning in March 2010. R. 208-

---

[1] Citations to the administrative record (Doc. No. 11) are as "R. __," using the pagination assigned by the SSA in the certified copy of the transcript of the administrative record. Citations to other documents filed in this Court use the pagination assigned by CM/ECF.

16, 295, 299. Following denial of Plaintiff's application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on October 17, 2013, at which Plaintiff and a vocational expert ("VE") testified. R. 32-51, 67-70. The ALJ issued an unfavorable decision on November 19, 2013. R. 12-25.

As relevant to this matter, a person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 20, 2011. R. 14. At step two, the ALJ found that Plaintiff had "the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral knees, obesity, chronic pain syndrome, depressive disorder and anxiety disorder." R. 14-15. At step three, the ALJ determined that Plaintiff's severe impairments, alone or combined, did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 15-16; *see also* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 16-24. He found that Plaintiff's RFC allowed her to perform "light work" as defined in 20 C.F.R. § 416.967(b), except

> [she] must have the option to sit/stand at the workstation without a loss of productivity. She has the occasional ability to push/pull including the operation of hand/foot controls. She can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolding. She can frequently balance[,] occasionally stoop, crouch and kneel, but never crawl. . . . . She can understand, remember, and carry out simple instructions and tasks. She can work with co-workers and supervisors on a superficial work basis, but she cannot work with the general public.

R. 16. He also found that Plaintiff had "no manipulative, visual, communicative, or environmental limitations" and that she could "adapt to routine changes at work." R. 16.

At step four, the ALJ found that Plaintiff's RFC would not allow her to return to her past relevant work as a waitress, fast-food worker, or telemarketer. R. 24. At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 24-25. Relying on the VE's testimony concerning the degree to which Plaintiff's additional limitations eroded the unskilled light occupational base, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as mail sorter, stock clerk, and routing clerk. R. 25; *see* R. 48-50. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act between April 20, 2011, and November 19, 2013. R. 25. The Appeals Council declined to review that decision, R. 1, and this appeal followed.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff makes three arguments on appeal. First, she argues that the ALJ erred at step two when he did not find Plaintiff's peripheral vascular disease ("PVD") to be a "severe" medically determinable impairment. Pl.'s Br. (Doc. No. 12) at 8-9. Second, Plaintiff argues that the ALJ erred at step three when he found that Plaintiff's severe depression and anxiety did not meet the "Paragraph B" criteria in Listing 12.04 and Listing 12.06, respectively, despite the fact that her treatment providers consistently

assigned very low Global Assessment of Functioning ("GAF") scores.[2]  *See id.* at 10-12.  Finally, Plaintiff argues that the ALJ's RFC determination is flawed because it does not state the amount of time Plaintiff can sit and stand during an eight-hour workday.  *See id.* at 13-15.

A.     *Step Two: Severe Impairments*

At step two of the five-step evaluation process, the ALJ must determine whether the claimant has a "severe" medically determinable impairment(s) that significantly limits the claimant's physical or mental ability to perform basic work activities.  *Wall*, 561 F.3d at 1052; 20 C.F.R. § 416.920(c).  Although "this step requires a de minimis showing of impairment," the claimant must produce evidence of functional limitations beyond "the mere presence of a condition or ailment" to support a finding that an impairment is "severe."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (internal quotation marks omitted).  An erroneous failure to find that an impairment is "severe" at step two is usually harmless if the ALJ finds at least one severe impairment and then takes into account the combined limiting effects of "*all* medically determinable impairments, severe

---

[2] GAF scores represent "a clinician's judgment of the individual's overall level of functioning" at a given time.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) [hereinafter *DSM-IV*].  The scores are arranged on a 100-point scale, with a score between 91 and 100 representing "[s]uperior functioning" with no psychiatric symptoms, and a score between 1 and 10 representing "[p]ersistent danger of severely hurting self or others" or "persistent inability to maintain minimal hygiene," or "serious suicidal act with clear expectation of death."  *Id.* at 34.  "The most recent edition of the *DSM* omits the GAF scale 'for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'"  *Richards v. Colvin*, 640 F. App'x 786, 791 (10th Cir. 2016) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) [hereinafter *DSM-V*]).

5

or not," at the remaining steps of the sequential evaluation process. *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010).

Plaintiff objects to the ALJ's failure to find that her diagnosed PVD was a severe impairment. According to Plaintiff, the condition causes swelling in her legs if she stands for too long, and she is required to elevate her legs for at least one hour every day. Pl.'s Br. at 9; *see also* R. 37, 40-41, 50, 306, 433. Although the ALJ did not mention Plaintiff's "mild distal" PVD at step two, he thoroughly discussed the medical and other evidence relevant to that condition when assessing Plaintiff's physical RFC. R. 14-16, 17-23 (citing Exs. 5E, 1F, 4F, 18F, 19F); *see also* R. 355, 357, 361-62, 371-73, 377, 390, 393-94, 432-35, 468, 629, 646-47, 660, 668, 678-80, 688-89, 762. The ALJ also included related functional restrictions in the RFC, such as limiting Plaintiff to "light work" with a sit/stand option that requires only the "occasional" use of foot controls or climbing ramps and stairs and never involves climbing ladders, ropes, or scaffolding. R. 16, 18; *see also* R. 48-49. Plaintiff does not challenge the ALJ's decision to not fully credit her testimony that the swelling in her legs is severe to a level would be beyond that reflected in the RFC. *See* Pl.'s Br. at 8-9; R. 16, 17-18, 23-24. Nor does Plaintiff identify any specific functional limitations related to her PVD that the ALJ erroneously omitted from his RFC determination. *See* Pl.'s Br. at 8-9. Accordingly, the ALJ's failure at step two to find that Plaintiff's diagnosed PVD was a severe impairment, if error, was harmless. *Grotendorst*, 370 F. App'x at 883.

B.   *Step Three: Listings 12.04 and 12.06*

Plaintiff argues that her severe depressive disorder and severe anxiety disorder meet *some* of the criteria in Listing 12.04 and Listing 12.06, respectively, because mental health professionals, including a treating psychiatrist, have consistently assigned Plaintiff "extremely low" GAF scores during the course of her treatment at Red Rock Behavioral Health Services. Pl.'s Br. at 10. A claimant whose severe medically determinable impairment(s) "'meets or equals one of the impairments listed in the regulations is conclusively presumed to be disabled'" regardless of his or her age, education, or work experience. *Peck v. Barnhart*, 214 F. App'x 730, 732 (10th Cir. 2006) (quoting *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988)); *see also* 20 C.F.R. § 416.920(d), .925. A severe impairment "meets" a listing if it "satisfies *all* of the criteria of that listing, including any relevant criteria in the introduction, and meets the [twelve-month] duration requirement." 20 C.F.R. § 416.925(c)(3) (emphasis added). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The "claimant must provide specific medical findings" to establish that a severe impairment meets all of the criteria in a particular listing. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (citing 20 C.F.R. § 416.925).

Listing 12.04 covers affective disorders, including depression, "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpart P, app. 1 § 12.04. "The required level of severity for these disorders is met when the requirements in both [Paragraphs] A and B are satisfied, or

7

when the requirements in [Paragraph] C are satisfied." *Id.* As relevant here, Paragraph A requires "medically documented persistence, either continuous or intermittent," of a "[d]epressive syndrome characterized by at least four" listed psychiatric signs or symptoms, such as "pervasive loss of interest in almost all activities," "[p]sychomotor agitation or retardation," "[d]ifficulty concentrating or thinking," "[a]ppetite disturbance with change in weight," or "[h]allucinations, delusions, or paranoid thinking." *See id.* § 12.04(A)(1)(a)-(i); R. 15-16. Paragraph B requires evidence that the depressive syndrome "result[s] in at least two of the following": marked restrictions performing activities of daily living; marked difficulties maintaining social functioning; marked difficulties maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpart P, app. 1 § 12.04(B)(1)-(4).

Listing 12.06 covers anxiety-related disorders in which "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master" his or her related symptoms. *Id.* § 12.06. "The required level of severity for these disorders is met when the requirements in both [Paragraphs] A and B are satisfied, or when the requirements in both [Paragraphs] A and C are satisfied." *Id.* Paragraph A requires "[m]edically documented findings of at least one" of five specific psychiatric conditions, such as "[g]eneralized persistent anxiety accompanied by" certain listed symptoms, "[r]ecurrent obsessions or compulsions" causing "marked distress," or "[r]ecurrent and intrusive recollections of a traumatic experience" causing "marked distress." *Id.* § 12.06(A)(1)-(5). As in Listing 12.04, Paragraph B requires evidence that the psychiatric

condition "result[s] in at least two of the following": marked restrictions performing activities of daily living; marked difficulties maintaining social functioning; marked difficulties maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* § 12.06(B)(1)-(4).[3]

Plaintiff argues that her "extremely low" GAF scores "clearly" establish that she has "marked" limitations in all three of the Paragraph B functional areas for both Listings. *See* Pl.'s Br. at 12. The ALJ found that Plaintiff had "mild" restrictions performing activities of daily living; "mild difficulties" in social functioning; "moderate difficulties" maintaining concentration, persistence, or pace; and "experienced no episodes of decompensation" of extended duration. R. 15-16 (citing Exs. 5E, 3F). Plaintiff correctly notes that her Red Rock records contain several GAF scores between 37 and 41, a range that is on the lower end of the 100-point GAF scale.[4] Pl.'s Br. at 11-12; *see* R. 416, 476, 574, 579, 585, 591, 596, 601, 606, 610, 612, 618. The ALJ did not

---

[3] As to both Listings, a "marked" limitation means that the "nature and overall degree of interference" caused by the severe mental impairment is "more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when one is impaired, so long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpart P, app. 1 § 12.00(C), (C)(1) (citing 20 C.F.R. § 416.920a).

[4] A GAF score between 31 and 40 represents "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *DSM-IV*, *supra*, at 34. A GAF score between 41 and 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

mention these GAF scores in his otherwise thorough and accurate summary of Plaintiff's mental health records. *See* R. 15-16, 18-21, 23.

But a "low GAF score, standing alone, is insufficient" evidence of a claimant's Paragraph B functional limitations "because the Commissioner does not consider GAF scores to 'have a direct correlation to the severity requirements in [the] mental disorders listings'"[5] and the current *Diagnostic and Statistical Manual of Mental Disorders* has discontinued their use. *Rose v. Colvin*, 634 F. App'x 632, 636 (10th Cir. 2015) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); citing *DSM-V*, *supra*, at 16). While it would have been useful for the ALJ to cite these GAF scores in his summary of the medical evidence, it is clear that he "considered" the records in which the scores appear and that these relatively low GAF scores were not "uncontroverted" evidence of Plaintiff's limitations in the Paragraph B functional areas. *Wall*, 561 F.3d at 1066, 1070; *see* R. 15-16, 19-21, 23-24; *cf. Butler v. Astrue*, 412 F. App'x 144, 146-47 (10th Cir. 2011)

---

[5] The Tenth Circuit has noted in unpublished decisions that a GAF score of 50 or below "suggest[s] an inability to keep a job" and therefore "should not . . . be[] ignored" when the ALJ assesses the claimant's ability to perform work-related activities at steps two and four. *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (step two); *see also Davison v. Colvin*, 596 F. App'x 675, 681-82 (10th Cir. 2014) (step four); *Oslin v. Barnhart*, 69 F. App'x 942, 946-47 (10th Cir. 2003) (step four); *accord Holcomb v. Astrue*, 389 F. App'x 757, 760 (10th Cir. 2010) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC . . . , it is not essential to the RFC's accuracy' and taken alone does not establish an impairment serious enough to preclude an ability to work." (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Plaintiff cites no authority for the proposition that the ALJ must discuss low GAF scores at step three even though "no Mental Listing includes GAF scores within its criteria." *Mertes v. Colvin*, No. CIV-14-1239, 2015 WL 4617448, at *4 (D. Kan. July 31, 2015).

("[B]ecause the GAF scores at issue were not linked to any work-related limitations, they are not particularly helpful."). In July 2011, for example, examining psychologist Heidi Holeman Kamm, PhD, assigned Plaintiff a GAF score of 68, R. 427, which represents "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social [or] occupational . . . functioning . . . , but generally functioning pretty well [and] has some meaningful personal relationships," *DSM-IV*, *supra*, at 34. In September 2011, a Red Rock social worker assigned Plaintiff a GAF score of 37, R. 476, which represents "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work . . . , family relations, judgment, thinking, or mood," *DSM-IV*, *supra*, at 34. Consistent with Dr. Kamm's observations, Plaintiff's psychiatrist at Red Rock, Darrel Schreiner, MD, noted that Plaintiff's mental status was within normal limits on four separate visits between July and October 2011. R. 477, 479, 481, 483. Around the same time, Plaintiff reported that she visited with her family members every day, regularly attended church, helped manage her mother's household, and denied difficulty caring for her personal needs. R. 307, 310, 424-25. The ALJ discussed all of this evidence in his written decision. R. 16, 19-21. The Court sees no error in the ALJ's Paragraph B findings.

Even if Plaintiff established that the Paragraph B criteria had been satisfied, however, she would still have to establish that her depressive disorder or her anxiety disorder satisfied the Paragraph A criteria in their respective Listings in order to show

that the mental impairment "meets" its Listing.[6] *See* Pl.'s Br. at 10-12; *Zebley*, 493 U.S. at 530; *Lax*, 489 F.3d at 1085; 20 C.F.R. § 416.925(c)(3). Although the ALJ did not separately discuss these criteria at step three, his decision contains other findings supporting a conclusion that the medical record does not establish the Paragraph A criteria in either Listing 12.04 or Listing 12.06. *See, e.g.*, R. 16, 20. *But see* R. 24 (affording "little weight" to an August 2011 Psychiatric Review Technique, which reflected a state-agency psychologist's opinion that the medical evidence did not meet the Paragraph A criteria in Listing 12.04 or Listing 12.06, "because evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants" (citing R. 437-54 (Exs. 5F, 6F)). In assessing Plaintiff's RFC, for example, the ALJ found that Dr. Schreiner "[g]enerally" and "usually" noted that Plaintiff's mental status was within normal limits during their monthly visits between April 2011 and August 2013. R. 19-20 (citing Exs. 2F, 10F, 16F, 17F). Plaintiff does not challenge this finding, which is fully supported by both her psychiatrist's longitudinal treatment notes and her own statements to treatment providers. *See* R. 421-22, 477-78, 479-86, 515, 518, 521, 524, 528, 532, 536, 540, 544, 548, 552, 556, 560, 564-65, 574-75, 591-92, 596-97, 601-02, 606-07, 610-11, 612-13 (Dr. Schreiner's treatment notes), 652, 670, 675, 679, 699, 705, 743 (Plaintiff's reports that she had not experienced "little interest or pleasure in doing things" or "fe[lt] down, depressed, or hopeless" at any time in the past two weeks). Nor does Plaintiff specifically challenge the ALJ's subsequent determination

---

[6] Plaintiff also does not challenge the ALJ's finding that "the evidence fails to establish the presence of the '[P]aragraph C' criteria" for Listings 12.04 and 12.06. R. 16.

12

that, even with severe depression and anxiety, Plaintiff still could perform certain occupations involving "simple instructions and tasks" that did not require more than "superficial" interaction with supervisors and coworkers or any interaction with the general public. R. 16, 24-25. Accordingly, because Plaintiff has not shown that she would otherwise have satisfied Listing 12.04 or 12.06, any error in the ALJ's Paragraph B findings and failure to mention Plaintiff's low GAF scores would not be a reversible error. *Cf. Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-35 (10th Cir. 2005) (holding that "any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless" where substantial evidence supports the ALJ's relevant "findings at steps four and five of his analysis" and "[n]o reasonable factfinder could conclude" that the claimant's impairment met a listing).

C.  *Plaintiff's RFC*

Finally, Plaintiff argues that the ALJ's physical RFC determination "is not sufficiently specific" because it "does not indicate how often [she] would have to sit or how long [she] would have to stand" during a normal eight-hour workday. Pl.'s Br. at 13, 14. A claimant's RFC represents the most work-related activity he or she can do in an ordinary workplace setting on a regular and continuing basis despite the total limiting effects of his or her medically determinable impairments. *See* 20 C.F.R. § 416.945(a)(1), (e); SSR 96-8p, 1996 WL 374184, at *2, *5 (July 2, 1996). "The RFC assessment is a function-by-function assessment" that "must be based on *all* of the relevant evidence in the case record" and "must include a narrative discussion describing how the evidence

supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *3, *5, *7.

The claimant bears the burden of showing that specific "functional limitations or restrictions caused by [his or her] medical impairments and their related symptoms," *id.* at *1, should be included in the RFC assessment. *See Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015); *Tomlinson v. Astrue*, No. CIV-12-159-C, 2012 WL 4758120, at *3 (W.D. Okla. Oct. 5, 2012). As with any necessary factual finding, however, the ALJ's RFC assessment must be reached through application of the correct legal standards and supported by substantial evidence in the record. *See Moon v. Barnhart*, 159 F. App'x 20, 23 (10th Cir. 2005); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004). The Court must affirm the ALJ's RFC finding if it determines that the "correct legal standards have been applied" and it can "follow the [ALJ's] reasoning in conducting [its] review." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166, 1167 (10th Cir. 2012) ("[C]ommon sense, not technical perfection, is our guide."); *accord Lax*, 489 F.3d at 1089 ("As long as substantial evidence supports the ALJ's determination, the Commissioner's decision stands." (alteration and internal quotation marks omitted)).

Plaintiff's only objection to the ALJ's RFC determination is that the phrase "the claimant must have the option to sit/stand at the workstation without a loss of productivity," R. 16, is "ambiguous and confusing" because it "does not indicate how often [she] would have to sit or how long [she] would have to stand" during the workday. Pl.'s Br. at 13, 14. Plaintiff is correct that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related

abilities on a function-by-function basis," including her ability to sit, stand, and walk during the workday. SSR 96-8p, 1996 WL 374184, at *1 (citing 20 C.F.R. § 416.945(b)). Individuals whose physical impairments limit them to sedentary work "may need to alternate" between sitting and "standing (and, possibly, walking) periodically" in order to accommodate an inability to sit for six hours during an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *6-7 (July 2, 1996); *see also* SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983). In those cases, the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing" because a so-called "sit/stand option" erodes the unskilled sedentary occupational base. SSR 96-9p, 1996 WL 374185, at *7; *see also* SSR 83-12, 1983 WL 31253, at *4 ("Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."); *Jimison ex rel. Smith v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013) (concluding that an "at will" sit/stand option was sufficiently specific to satisfy Ruling 96-9p); *Vititoe v. Colvin*, 549 F. App'x 723, 731 (10th Cir. 2013) (noting that Ruling 96-9p applies only in cases where the claimant is limited to "sedentary" work and does not apply in cases where the ALJ finds that the claimant can perform at least a limited range of "light" work).

Here, the ALJ's hypothetical question to the VE contemplated a person who could perform "light" work insofar as he or she could stand, walk, and sit for six hours in an eight-hour workday but "must have the option to sit/stand at the work station without a

loss of productivity."[7] R. 48-49. The VE testified that a person with these limitations could work as a mail sorter, a routing clerk, or a stock clerk so long as the person did not "need[] to *move away* from the work station at will." R. 49-50 (emphasis added). Although the ALJ did not use a phrase such as "at will" or "as needed" to describe the stationary sit/stand option, the most reasonable construction of the hearing testimony is that the VE understood the phrase "must have the option to sit/stand at the work station without a loss of productivity" meant that the person could choose when to sit and when to stand throughout the full time spent at her workstation. *See* R. 48, 49-50.

The ALJ's hypothetical question is consistent with his RFC determination that Plaintiff could perform "light work" as defined in 20 C.F.R. § 416.967(b), "except [she] must have the option to sit/stand at the workstation without a loss of productivity," R. 16. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."). Plaintiff does not argue that she cannot sit for extended periods, or that she would need to "move away from" her workstation throughout the day. Pl.'s Br. at 13-15; *see also* R. 37, 41, 306-07, 309, 311. Nor does Plaintiff challenge the ALJ's decision to not fully credit her allegation that she "can sit for 30 minutes, then has to get up and move around" to relieve the pain in her lower back. R. 17, 24, 39; *see also* R. 37 (Plaintiff's testimony that she

---

[7] The hypothetical question also included all of the other physical, postural, and mental limitations reflected in the ALJ's RFC determination. R. 16, 48-49. Plaintiff does not challenge these aspects of the RFC determination.

will "sit down . . . for at least an hour or two" at the end of the days she spends "standing up on [her] feet for eight hours").

Having independently reviewed the record, the Court finds that the ALJ's RFC determination is otherwise supported by substantial evidence, including Dr. Schreiner's longitudinal treatment notes; two examining sources' findings on consultative physical and mental exams; Plaintiff's reported daily activities and statements to treatment providers; and the state-agency medical reviewers' opinions, which were in certain respects less restrictive than the ALJ's RFC determination. *See, e.g.*, 421-22, 477-86, 536, 540, 544, 548, 552, 556, 560, 564-65, 574-75, 591-92, 596-97, 601-02, 606-07, 610-13 (Dr. Schreiner's treatment notes), 424-27, 430-38 (mental and physical consultative exams), 307, 310, 424-25, 652, 670, 675, 679, 699, 705, 743 (Plaintiff's daily activities and reported symptoms), 451-55, 457-60, 488-94 (state-agency reviewers' opinions). Accordingly, the VE's answer to a hypothetical question "that included all the limitations the ALJ ultimately included in his RFC assessment" adequately supports the ALJ's step-five decision that Plaintiff is not disabled. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

## CONCLUSION

The final decision of the Commissioner is affirmed. A separate judgment shall be entered.

ENTERED this 30th day of September, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

17